OPINION of the Court, by
Judge Ovvsley
Yo~prosecuted an ejectment and obtained judgment at law for a mill and abeut 22 acres of land. To be relieved from this judgment and recover the land, Swope cx-bibbed his bill in equity. Both parties deduce title from Thomas Carland. Swope claims the superior equi-ty5 under a purchase made by Jacob Shaw from Carland, Pfior to Yoder’s obtaining any interest in the land. He a deed from Carland to Shaw, bearing dat-9 *205 prior to Carland’s obtaining the complete legal title to the land, and prior to the date of the deed from Car-land to Yoder. He charges that Yoder, with full knowledge of his prior equity, obtained the deed from Car-land, which he avers to be merely voluntary, without any consideration. The court below on a final hearing decreed the land to Swope.
tion and the particular boun. darles named ii) a deed, the former muifc yield to the lat«. ter.
The deed defcribed the land as “binding on B's. cretkt containing one hundred and fir. ty acres, more or lefs, and , bounded as follows,” &c. one of the corners named, was on an iiland in the creek, ‘‘running thence to thebe* ginning •»» the line from the corner on the island, ihall be a jlraight line to the begin* níng, and not with the mean* ders of the creek.
Against this decree it is first objected that the deed from Carland to Shaw does not include the land in contest ; hence it is inferred Swope, who claims under Shaw, has no equity. The deed to Shaw describes the land as being a tract situate in Shelby county, and bind-ding on Brashears’ creek, containing 156 acres, more or less, and bounded as follows, viz. beginning at two hoopwoods, &c. and containing a minute description of the courses and distances of the several lines and corners, to the last corner, on an island of Brashears’ creek, and describing the last line as running from thence to the beginning. The beginning corner stands on the no~rth side of the creek, and by extending a direct line from the corner on the island to the beginning will include the land in question. Whether, therefore, the last line should be a straight line from corner to corner, or conform to the course of the creek, is the only point of any difficulty in this branch of the cause. On the part of Yoder it is urged the description in the deed binding on the creek, excludes the construction of the last line being straight, but requires it should conform to the course of the creek. It is evident, however, a line Cannot be extended from the corner on the island to the beginning and bind on the creek. The corner on the island stands some distance from the creek; and a line extended therefrom to the beginning must necessarily cross the creek. When,-therefore, it is apparent that the description binding on the creek, forms no part of the boundary, as particularly described in the deed, and cannot be conformed to by complying with the express calls of boundary, it seems pretty clear that it should be considered as yielding to the more special specification of boundary, and that the last line should be extended ón a straight direction from the corner-on the island to the beginning. ’
But it is also objected, that should the deed from Carland to Shaw be construed to cover the land in con *206 test, Swope is not entitled to relief in equity, because it. is contended, 1st, that Shaw fraudulently procured the execution of the deed from Carland ; and 2d, if it was not fraudulently procured, the deed, so far as relates to the land in question, is voluntary, and consequently equity ought not to interpose to perfect the title.
A survey of the land purchased from Carland by Shaw, seems, from the evidence in the cause, to have, been first made on the north side of the creek ; and it is now contended by Yoder, that Carland was induced to execute the deed to Shaw under an impression that he was conveying the land conformably to the survey made on the north side of the creek. It is clear, however, that after making the survey on the north side of the creek, Carland made the corner for Shaw on the island called for in the deed and though the evidence to this branch of the cause is somewhat complicated, we think it evident Carland was not imposed on, but that he executed the deed with an intent that the corner on the island should form a part of the boundary, and that the land in question should be included. Unless the objection of Yoder, therefore, that the deed was voluntary as to the land in question, should be found fatal in a court of equity interposing, the decree of the court below must be affirmed. It is evident Shaw purchased from Carland, and paid for a tract of land ; and although the survey as originally made for Shaw, did not include the land in contest, the parties seem afterwards to have so changed the boundary as to include the land. The consideration, therefore, paid by Shaw, cannot properly be confined to any particular part of the land described by the deed in exclusion of the balance, but must attach to the entire boundary ; and consequently the deed, as to the land in question, should not be deemed voluntary. The doctrine that courts of equity will not perfect a voluntary title, seems therefore not applicable to the case now under consideration.
A majority cf the court are therefore of opinion that, Swope has shewn a good equitable right to the land, and as the evidence conclusively proves Yoder procured his title with full knowledge of that equity, the court below decided correctly in decreeing relief to Swope»
The decree must be affirmed with costs, &c.